IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN E. CROSS,<br><br>              Plaintiff,<br><br>v.<br><br>VALLEY SERVICES, INC.,<br><br>              Defendant. | **MEMORANDUM<br>DECISION AND ORDER**<br><br>Case No. 2:10-cv-00749 CW<br><br>District Judge Clark Waddoups |

**INTRODUCTION**

After not being promoted to the position of a supervisor, plaintiff John E. Cross filed a complaint with the Utah Labor Commission, alleging that defendant Valley Services, Inc. ("Valley Services") discriminated against him based on his disability. Subsequently, Valley Services issued written warnings to Mr. Cross for behavior that allegedly violated company policy. Approximately two years after Mr. Cross filed his complaint with the Labor Commission, Valley Services terminated Mr. Cross. Mr. Cross now asserts claims for (1) discrimination under the Americans with Disabilities Act, (2) hostile work environment, and (3) retaliation. Valley Services has moved for summary judgment on each of the claims. For the reasons discussed below, the court concludes there are genuine issues of material fact for Mr. Cross's discrimination claim, but that his claims for hostile work environment and retaliation fail as a matter of law. Therefore, Valley Services' motion for summary judgment is granted in part and denied in part.

1

## **FACTS**

**Application Process at Valley Services**

Valley Services is a non-profit organization committed to employing and retaining disadvantaged individuals with mental health disabilities, low income, or other similar challenges. Depending on qualifications, its employees work as janitors, painters, building and yard maintenance technicians, and so forth. Valley Services recruits many of its employees from Valley Mental Health. It asks applicants whether they are currently qualified to receive social security disability insurance or temporary assistance for needy families. Valley Services also asks if the applicant has ever worked in supported employment. Valley Services Application for Employment (Dkt. No. 44, Ex. D).

Valley Services then asks applicants to complete voluntarily a Job Interests Questionnaire. That questionnaire asks whether the applicant is a customer of Valley Mental Health, whether the person has a therapist or case manager, and what type of public assistance the person receives. Job Interests Questionnaire (Dkt. No. 26, Ex. D.). Along with his application, Mr. Cross completed the questionnaire. He disclosed that he was a customer of Valley Mental Health and had a current therapist. Mr. Cross is allegedly disabled due to depression that results in angry outbursts. Despite this alleged disability, Valley Services hired Mr. Cross in October 2002 to be a janitor.

After Mr. Cross was hired, Valley Services added his name to a large whiteboard it kept in a common area. The whiteboard listed each employee's name, the department to which they were assigned, the supervisor of that department, and the manager of the department. Mr. Cross's name was written in red on the board. Picture of Whiteboard, 2 (Dkt. No. 26, Ex. F). This signified Mr.

Cross was disabled. *See* Cross Depo., 20:15 25 (Dkt. No. 26, Ex. B). The names of non-disabled individuals were written in black. *Id.*

Mr. Cross was asked about the whiteboard during his deposition. He testified as follows:

> Q. Did Valley do anything to make you feel self-conscious about your disability?
>
> A. No.
>
> Q. No? What did the whiteboard make you feel self-conscious about your depression or your disability at all?
>
> A. Not really. Not really. More than anything, it was just the fact that you were there listed as disabled. Nobody had any idea, you know.
>
> Q. Gotcha. But as far as your know as far as it affecting your work, did it really affect your work, the fact that the board was there?
>
> A. No.
>
> Q. Okay. So is it a fair statement other than being, you know, kind of a minor annoyance, it didn't affect you at work too much?
>
> A. Yeah, for the most part, yeah.
>
> Q. Is that a fair statement?
>
> A. Yeah.

Cross Depo. II, 73:16 74:12 (Dkt. No. 23, Ex. A(1)). When the whiteboard first went up, Mr. Cross made a remark about it, but never filed a formal complaint. *Id.* at 74:20 75:7.

**Disabled Individuals in Management Positions**

Approximately sixty-one percent of the employees at Valley Services are disabled. The whiteboard showed one disabled person employed as a "custodial supervisor." Picture of Whiteboard, 2 (Dkt. No. 26, Ex. F). All other supervisor positions were filled by a non-disabled

person. Likewise, the whiteboard showed that all manager positions and other top positions were filled by a non-disabled person. *Id.* Valley Services contends, however, that "approximately 45.71% of supervisors at Valley were either disabled or disadvantaged" during the relevant time period. Decl. of Wells McDonald, ¶ 7 (Dkt. No. 23, Ex. B). Valley Services provides no foundational support for this calculation.

Mr. Cross, however, submitted a document produced by Valley Services in response to Mr. Cross's Labor Commission complaint. According to that document, Valley Services classifies the position of "Team Leader" as a "Management/Supervision" position. Management/Supervision Statistics (Dkt. No. 26, Ex. G). Of the twenty-one Team Leader positions, thirteen were held by individuals who were disabled or disadvantaged in comparison to eight who were non-disabled. *Id.* In contrast, of the thirteen upper management positions (supervisor, assistant supervisor, manager), two were held by disabled individuals and eleven were held by non-disabled individuals. *Id.* Thus, while Valley Services does have disabled individuals serving in leadership positions, the positions are largely in lower management rather than upper management. Mr. Cross's complaint focuses on Valley Services' alleged discrimination for upper management positions.

Mr. Cross worked for Valley Services as a janitor for approximately three years and was then reassigned to be painter. Four years after he was hired, Mr. Cross was promoted to a maintenance technician position in October 2006. Prior to working at Valley Services, Mr. Cross not only had experience in building maintenance, he had been a building maintenance supervisor. Consequently, when Mr. Cross learned in July 2007 that a Maintenance Supervisor position was opening at Valley

Services, he applied for the position.[1] Valley Services then told Mr. Cross it had decided against filling the position.

On or about July 23, 2007, however, Valley Services hired Nick Flink. Mr. Cross alleges that Valley Services told its employees that Nick Flink was a co-worker when in actuality he was hired as the Maintenance Supervisor. On or about April 10, 2008,[2] Mr. Flink took disciplinary action against an employee in the maintenance department. When Mr. Cross questioned how he had authority to take the action, Mr. Flink allegedly told Mr. Cross that he had the authority because he was the Maintenance Supervisor. Mr. Flink is not disabled.

Mr. Cross filed his Labor Commission complaint on May 22, 2008.[3] He alleged he had not been promoted due to his disability, despite the fact that he had more maintenance experience than Mr. Flink and the Manager. Labor Commission Intake Questionnaire (Dkt. No. 45, Ex. J). Mr. Cross further alleged that he had trained his supervisor and that Valley Services violated its company policy of promoting within when there is a qualified internal applicant. *Id.* Valley Services was notified about the complaint on or about June 11, 2008. *See* Labor Comm'n Notification Letter (Dkt.

---

[1] It is unclear whether Mr. Cross actually applied for the position or whether he merely expressed an interest in it. *See* Cross Depo., 68:3 7 (Dkt. No. 26, Ex. B) (stating the position was never actually posted).

[2] The parties provide two different dates for this event: April 10, 2008 and May 5, 2008. For purposes of this motion, the difference in dates is immaterial.

[3] Although Mr. Cross filed his complaint more than 300 days after Mr. Flink was allegedly hired, at a minimum, an issue of fact exists about whether Mr. Cross knew nor should have known that Mr. Flink was the supervisor before May 2008. The court therefore has jurisdiction to address this action.

No. 26, Ex. L). In its response to the Labor Commission, it denied hiring a maintenance supervisor in July 2007. *See* Valley Services' Response, 2 (Dkt. No. 26, Ex. J).

Valley Services then changed the whiteboard and no longer identified by name which employees were "disabled" or "non-disabled." *See* Picture of Whiteboard, 3 (Dkt. No. 26, Ex. K). Instead, Valley Services added a legend that specified "red" meant disabled and "blue" meant non-disabled. Then, for each department, it listed the total number of disabled individuals in red and the total number of non-disabled individuals in blue. *Id.*; *see also* Cross Depo., 62:6 63:1 (Dkt. No. 26, Ex. B).

Shortly thereafter, Valley Service posted a job for "Construction/Maintenance Supervisor and Customer Liaison Specialist." Mr. Cross applied for the position, along with Mr. Flink and one other person. Before interviewing, however, Mr. Cross withdrew his name from consideration. Valley Services then hired Mr. Flink for the position and updated the whiteboard to list him as the maintenance supervisor. Whiteboard, at 3 (Dkt. No. 26, Ex. K).

**Job Description**

Mr. Cross contends the job posting was a sham for two reasons. First, Mr. Flink had already been hired for the position in July 2007 and Valley Services was simply taking this action in response to his discrimination complaint. Second, the job description had been modified to fit Mr. Flink's skills and exclude Mr. Cross. In about January 2008, Valley Services had drafted a "Wage Ladders" document that described the qualifications for each position at the company. The qualifications for a maintenance supervisor were as follows:

> Will supervise employees to ensure work is done. Competent skills
> in general and/or construction[,] maintenance. Able to complete

> work orders with time, quality and profitability in mind. Show can
> work and lead others to complete assigned jobs. . . . Be familiar with
> customer contacts, policies and procedures. Have worked for Valley
> Service for two years.

Wage Ladders, 5 (Dkt. No. 46, Ex. FF). Valley Services contends the court should disregard the description listed in the Wage Ladders document because that document was not adopted officially by Valley Services. Instead, it contends the court should look at the qualifications listed for the Construction/Maintenance Supervisor and Customer Liaison Specialist, which are:

> [T]he ability to communicate well with customers, employees and management. The ability to train and supervisor [sic] construction/maintenance workers for improved skill levels and performance. The ability to train employees to effectively communicate with customers, suppliers, other employees and management. The ability to take direction from the Construction/Maintenance Manager and the ability to coordinate all activities with same. Also the necessary knowledge to train employees to improve their skill levels, abilities, time usage and production abilities. As well as the ability to make the company profitable.

Position Opening Announcement (Dkt. No. 26, Ex. M).

When responding to the Labor Commission complaint, Valley Services denied that it hired Mr. Flink for the supervisor position in July 2007. Instead, Valley Services asserted it hired Mr. Flink in 2007 to be "a mentor/consultant/marketing person." Valley Services' Response to Labor Commission Complaint, at 2 (Dkt. No. 26, Ex. J). In that position, Mr. Flink "was to mentor employees to improve profitability, improve customer service, help expand sales, diversify the customer base, and to become the qualifier for Valley Services, Inc.'s General Contractor's license." *Id.* Valley Services asserted Mr. Flink was hired for the position because its "largest customer was expressing concerns about our quality, timeliness, employee skills and customer service." *Id.* Valley

Services acknowledged, however, that when it did hire Mr. Flink for the supervisor position in 2008, he "was hired for this position with no change in pay or benefits." *Id.*

**Disciplinary Actions**

Although contrary to its representation to the Labor Commission, in its motion for summary judgment, Valley Services states that a person was hired on July 23, 2007 for the maintenance supervisor position.[4] Statement of Facts, ¶¶ 12 13 (Dkt. No. 23). It asserts, however, that Mr. Cross was not hired because he was not qualified for the position due to "a culmination of the concerns raised in the written notices of discipline in his personnel file." *Id.* ¶ 48. Between November 2002 and September 2005, Mr. Cross received five written warnings. On November 29, 2002, Mr. Cross received his first warning, which was for improperly trying to log onto another employee's computer. Mr. Cross denied he had attempted to log on to the computer instead, he asserted he was using the computer to access a singles site. Employee Warning Notice, at 6 (Dkt. No. 26, Ex. H).

On July 28, 2004, Mr. Cross received his second warning for "[h]arassing and teasing[,] also intimidating other employees." *Id.* at 5. The third warning occurred on September 17, 2004 when Mr. Cross "jumped out of van at stop light" and started screaming and swearing at a supervisor. *Id.* at 4. Mr. Cross signed the second and third warning notices and acknowledged his understanding of them, but he did not complete the portion of the form stating he agreed or disagreed with the employer's statement about the incidents.

---

[4] Valley Services states that Trent Anderson was hired, but this appears to be an error because Mr. Anderson was the Maintenance *Manager*. *See* Picture of Whiteboard (Dkt. No. 26, Ex. K).

Mr. Cross received his fourth warning on May 31, 2005 for "[l]eaving work when scheduled to work" and for "flying off the handle" at a supervisor. *Id.* at 3. He signed the warning notice and stated he agreed with the employer's statement. Likewise, he agreed with the employer's statement in the fifth warning, which stated Mr. Cross had cheated on his time card. *Id.* at 2. The fifth incident occurred on September 16, 2005. Following this fifth warning, Mr. Cross received no further written warnings before he applied for the supervisor position in July 2007.

In fact, his next written warning did not occur until September 2008. In that month, two warnings appeared in Mr. Cross's file because he was told that only one technician needed to work on a project but he was found working with another technician. Neither warning is signed by Mr. Cross. Employee Warning Notices, at 2, 4 (Dkt. No. 45, Ex. I). Therefore, the record is unclear whether these warnings were actually issued. *See* Cross Depo., 52:13 53:17, 54:12 24 (Dkt. No. 26, Ex. B),

On September 17, 2008, Mr. Cross did receive a warning for improper telephone usage. Employee Warning Notice, at 3 (Dkt. No. 45, Ex. I). Mr. Cross acknowledged the accuracy of the employer's statement. One year later, on September 18, 2009, Mr. Cross received a written warning for verbal outbursts, insubordination, walking off the job, and misuse of time. *Id.* at 5 7. The warning stated he was being offered anger management classes. *Id.* at 7. It explained the offer as follows:

> This outburst and many similar to it have been an ongoing occurrence, and because Valley Services, Inc. has tried diligently to work through these issues with you without any success, we are offering these classes as a way to help you correct your behaviors before further action become [sic] necessary.

*Id.* Mr. Cross signed the warning notice and stated he agreed with the employer's statement. *Id.* at 5.

Then, on February 9, 2010, Mr. Cross received two more written warnings. One warning was because he failed to show up for work for two days and could not be reached by telephone. *Id.* at 8 9. While Mr. Cross acknowledged the accuracy of the statement, he explained he had told the supervisor of the paint department about his leave. *Id.* at 8. At the time, Mr. Cross was assigned to the grounds department, but was on loan to the paint department. Because he only told the paint supervisor about his leave and not the grounds supervisor, Mr. Cross allegedly failed to comply with company policy. *See id.* at 9. The other warning was for recording time and work on his time sheet without evidence of a work order, in violation of department policy. *Id.* at 10 11. Mr. Cross signed the warning, but did not specify whether he agreed with the employer's statement. *Id.* at 10. Valley Services terminated Mr. Cross's employment on March 19, 2010, allegedly due to the culmination of reasons stated in the written warnings. Decl. of Wells McDonald, ¶¶ 15 16 (Dkt. No. 23, Ex. B).

**Alleged Evidence of Discriminatory Treatment**

Mr. Cross asserts the warnings in 2008, 2009, and 2010 occurred because he had filed a complaint with the Labor Commission. He points to the fact that he had received no written warnings for two and a half years prior to filing his complaint. Moreover, in November 2007, shortly after Mr. Flink was allegedly hired as the Maintenance Supervisor, Mr. Cross received a ranking of "accomplished" on a performance evaluation. Pay for Performance Appraisal (Dkt. No. 26, Ex. P).[5] The evaluation also was broken down by area of performance. Possible rankings

---

[5] The date on the first page states it was for January 2003 through January 2004. Mr. Cross represented this was an incorrect date. The document was signed by the parties on November 2007.

included "Competent," "Competent With Issues," and "Not Competent." *Id.* Mr. Cross received the highest ranking of "Competent" in all areas. *Id.* Finally, Mr. Cross asserts that many of the supervisors also engaged in angry outbursts; thus, he was just "following by example" when his behavior was like theirs. Cross Depo. 58:23 25 (Dkt. No. 26, Ex. B).

## ANALYSIS

### I. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). A fact is "material" if it is "essential to the proper disposition of the claim." *Id.* The court views the evidence in the light most favorable to the non-moving party, as "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the [nonmovant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### II. AMERICANS WITH DISABILITIES ACT

"The ADA protects individuals with physical disabilities or mental impairments that substantially limit major life activities, as well as individuals who are merely perceived to have such impairments." *Koessel v. Sublette County Sheriff's Dep't*, 717 F.3d 736, 2013 U.S. App. LEXIS 9677, at *7 (10th Cir. 2013) (citing 42 U.S.C § 12102(1)(C)). "ADA discrimination claims follow the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Wehrley v. Am. Family Mut. Ins. Co.*, No. 12-1079, 2013 U.S.

App. LEXIS 5603, at *8 (10th Cir. Mar. 18, 2013). Under this framework, Mr. Cross must "establish a prima facie case of discrimination." *Id.* If Mr. Cross meets his burden, Valley Services must then prove a legitimate, non-discriminatory reason for failing to promote Mr. Cross.

**A.     Discrimination Under the ADA**

"To establish a prima facie case of discrimination under the ADA," Mr. Cross must prove the following three factors: "(1) he is disabled (or perceived as disabled) as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability." *Koessel*, 2013 U.S. App. LEXIS 9677, at *7 (citation omitted). For purposes of this motion, Valley Services concedes that Mr. Cross is disabled.

I.     Qualified to Perform Essential Job Functions

The second factor requires Mr. Cross to show that there was a job opening in July 2007 and that he qualified for the position. As stated above, Valley Services informed the Labor Commission that it did not hire a maintenance supervisor in July 2007; yet, for purposes of summary judgment, Valley Services stated it did hire a maintenance supervisor on July 23, 2007. *Cf* Valley Services Response, 2 (Dkt. No. 26, J) *with* Valley Services Statement of Facts, ¶¶ 12 13 (Dkt. No. 23). For purposes of this motion, the court accepts as true that the job opening existed in July 2007.

Valley Services contends, however, that Mr. Cross was not able to perform the essential job functions of a Maintenance Supervisor as evidenced by his disciplinary record. It further contends that no reasonable accommodation would have allowed him to perform the essential functions and

that even if an accommodation had been feasible, Mr. Cross failed to avail himself of the interactive process to obtain one.

While it is true that Mr. Cross received a number of written warnings between 2002 and 2005, he received no further warnings for two and a half years before the Maintenance Supervisor position allegedly opened. Moreover, for more than a year after the position allegedly opened, Mr. Cross still received no written warnings. Additionally, during the relevant time frame, Mr. Cross received the highest possible ranking on his performance evaluation. The purpose of a written warning is for an employee to correct his behavior. A jury could reasonably conclude that Mr. Cross did so based on his performance evaluation and lack of written warnings. Because Mr. Cross had previously worked as a maintenance supervisor for another company, a jury also could reasonably conclude that even without an accommodation Mr. Cross had the requisite qualifications. The court therefore concludes a material issue of fact exists for this element.

      ii.      <u>Suffered Discrimination as a Result of Disability</u>

The final factor requires Mr. Cross to show that he did not receive the job promotion in July 2007 as a result of his disability. Again, Valley Services contends that Mr. Cross did not receive the job promotion because of his disciplinary problems. It further contends the very purpose of Valley Services is to advance disabled and disadvantaged individuals. Mr. Cross has come forward with evidence, however, from which a jury could conclude that a disproportionate number of non-disabled individuals serve in a management position. A reasonable jury also could conclude that Valley Services hid the fact that it had hired Mr. Flink for the position (who is not disabled) to avoid having to offer the position to Mr. Cross. When these facts are coupled with the void of disciplinary matters during the relevant time period, it shows a material issue of fact exists for this element. Mr. Cross

has therefore met his burden of showing a prima facie case of discrimination. Because Valley Services has come forward with no other evidence beyond Mr. Cross's disciplinary record, a jury could reasonably find that Valley Services' stated reason was merely pretextual. Because an issue of fact remains, summary judgment is denied on this claim.

### B. Hostile Work Environment

To prove hostile work environment, Mr. Cross must show a reasonable fact finder could conclude "that the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Benavides v. City of Okla. City*, No. 12-6107, 2013 U.S. App. LEXIS 1474, at *7 (10th Cir. Jan. 23, 2013) (quotations and citation omitted). Notably, "the environment must be both subjectively and objectively hostile or abusive." *MacKenzie v. Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (citations omitted). Nevertheless, a plaintiff does not have to "show actual psychological injury." *Davis v. U. S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998). Factors to consider are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotations and citation omitted).

In this case, Mr. Cross fails to address this claim in his "Argument" section. In his statements of fact, however, he does point to the application process and whiteboard in the common area to show Valley Services' misconduct. Although Valley Services may have asked inappropriate questions during the application process, those events occurred in 2002. With respect to the whiteboard, because it was posted in a common area for all to see, it could potentially be embarrassing to an employee. It did not, however, create an environment so unreasonable that it

interfered with an employee's performance. Indeed, Mr. Cross testified during his deposition, that it did not make him self-conscious nor interfere with his work. Instead, he agreed it was more like a minor annoyance. The court therefore concludes that even though the whiteboard may have been inappropriate, no reasonable fact finder could conclude that is rose to the level of creating a hostile work environment. Summary judgment on this claim is granted in favor of Valley Services.

### C. Retaliation

Finally, Mr. Cross alleges retaliation. To establish a prima facie case of retaliation, Mr. Cross must prove "(1) [he] engaged in a protected activity; (2) [Valley Services] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (citation and footnote omitted). In this case, the first two elements are satisfied. Mr. Cross engaged in a protected activity when he filed a complaint for discrimination in May 2008 and Mr. Cross's later termination by Valley Services constituted a materially adverse action.

To prove the third element, Mr. Cross must establish a causal connection between filing the complaint for discrimination and his later termination. *Id.* "The 'critical inquiry' at this prima facie stage is whether the plaintiff has demonstrated that the employer's action occurred under circumstances which give rise to an inference of unlawful discrimination." *Id.* (quotations, citation, and alteration omitted). Temporal proximity is one factor a plaintiff may rely on to prove the third element. A plaintiff may rely solely on this factor, however, "only if the termination is *very closely* connected in time to the protected activity." *Id.* (quotations and citation omitted) (emphasis in original).

Again, Mr. Cross does not address this claim in his "Argument" section. The facts are undisputed, however, that Mr. Cross filed a complaint with the Labor Commission in May 2008 and was not terminated until March 19, 2010. Thus, there is a lack of temporal proximity between his filing the complaint and his termination. There was also more than a three-month gap between Valley Services learning of the complaint on June 11, 2008 and Mr. Cross receiving his next written warning on September 17, 2008. Moreover, he did not receive another written warning after that until September 2009. Even viewing these facts in the light most favorable to Mr. Cross, they do not support a temporal connection between the events. Consequently, Mr. Cross must show something more to meet his burden.

Mr. Cross asserts that he had a general feeling he was terminated because of his complaint after all, "[n]o company wants a pain-in-the-ass-whistleblower-kind-of-guy around." Cross Depo. II, 84:3 17 (Dkt. No. 23, Ex. A(1)). He also asserts he was not doing anything that other people were not doing. In other words, he "was singled out." *Id.* at 84:24 85:1. The court concludes these allegations are insufficient to show retaliation.

Even if they were sufficient, Valley Services has shown a lawful ground for terminating Mr. Cross, namely, his repeated disciplinary problems after he learned Mr. Flink had been hired as the maintenance supervisor. Moreover, Mr. Cross has failed to come forward with evidence to show pretext. Pretext "may be based on weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." *Turner v. Publ Serv. Co.*, 563 F.3d 1136, 1143 (10th Cir. 2009). Mr. Cross has failed to come forward with such evidence. The court therefore grants summary judgment on this claim in favor of Valley Services.

**III.	MOTION TO STRIKE**

Valley Services filed a Motion to Strike many of the exhibits Mr. Cross relied on in his opposition memorandum as being inadmissible hearsay and unauthenticated. It also moved to strike a number of his factual assertions as being conclusory, outside of his personal knowledge, and hearsay. In 2010, Rule 56 of the Federal Rules of Civil Procedure was amended. In place of a motion to strike, the rule now contemplates an objection. *See* Fed. R. Civ. P. 56(c)(2) advisory committee's note. The standard for evaluating the admissibility of evidence is that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

In this case, most of the exhibits Valley Services seeks to exclude as unauthenticated are documents such as Valley Services' application form; job questionnaire; management statistics; and Mr. Cross's performance appraisal. It has not been alleged that the proffered documents are fabricated. Thus, the documents may be presented in a form admissible at trial following foundational testimony.

With respect to other exhibits or statements, the court concludes the same or has chosen not to rely upon certain evidence in its ruling. The court therefore denies Valley Services' motion to strike.

**CONCLUSION**

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Valley Services' Motion for Summary Judgment.[6] The court grants summary judgment in favor of Valley Services on Mr. Cross's claims for hostile work environment and retaliation. The court denies

---

[6] Dkt. No. 22.

summary judgment on Mr. Cross's claim for discrimination under the ADA. The court also DENIES Valley Services' Motion to Strike.[7]

DATED this 5th day of August, 2013.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[7] Dkt. No. 30.